```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION
```

ST. LUKE'S EPISCOPAL HOSPITAL,  §
                                §
            Plaintiff,           §
                                §
v.                               §
                                §   CIVIL ACTION NO. H-05-3825
PRINCIPAL LIFE INSURANCE CO.     §
and GUARDSMARK, INC.,            §
                                §
            Defendants.          §

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants' Motion for Summary Judgment (Docket Entry No. 13). For the reasons stated below, defendants' motion will be granted in part.

### I. Background

Defendant, Guardsmark, Inc., established a self-funded employee welfare benefit plan ("the Plan").[1] Guardsmark contracted with defendant Principal Life Insurance Co. to administer claims under the Plan, but Principal Life was not given discretionary authority over the Plan.[2] The Plan covers employees' medical costs, but excludes coverage for "confinement, treatment, or service that is subject to the Pre-Existing Conditions Restrictions

---

[1]Defendants' Motion for Summary Judgment, Docket Entry No. 13, p. 2; id. at Exhibit 1, No. 1.

[2]Id. at Exhibit 1, Declaration of Sherry Smithhart, ¶¶ 2-4.

Section."[3]  The Plan defines a "pre-existing condition" as a "condition (whether physical or mental), regardless of the cause of the condition for which medical advice, diagnosis, care, or treatment was recommended or received within the six-month period ending on the effective date of an individual's coverage under this plan."[4]  Mr. Chenoweth, an employee of Guardsmark, Inc., was a participant in the Plan whose coverage took effect on February 1, 2003.[5]

Plaintiff, St. Luke's Episcopal Hospital, seeks payment of medical expenses for an angioplasty performed on Chenoweth in March of 2003.  Before admitting Chenoweth to the hospital, plaintiff's representatives called Principal Life to inquire about Chenoweth's coverage under the Plan.  Chenoweth was then admitted to St. Luke's Hospital and St. Luke's submitted two claims to Principal Life for his treatment on March 31, 2003, and April 7, 2003.[6]  On May 21, 2003, Principal Life sent letters to three health care providers who treated Chenoweth, including plaintiff, requesting Chenoweth's medical records.[7]  By October 27, 2003, Principal Life had received all of the requested records.  Following an investigation of

---

[3] Id. at Exhibit 1, No. 2, p. 23.

[4] Id. at 25.

[5] Defendants' Motion for Summary Judgment, Docket Entry No. 13, Exhibit 1, Declaration of Sherry Smithhart, ¶ 4.

[6] Id. at ¶ 13.

[7] Id. at ¶ 14.

-2-

plaintiff's claims, Principal Life denied the claims and informed plaintiff that they fell within the pre-existing condition exclusion.[8]

In October of 2005 plaintiff brought suit in state court, alleging that it relied on misrepresentations made by Principal Life concerning Chenoweth's coverage benefits. Plaintiff asserts claims for negligent and statutory misrepresentation, breach of contract, and violations of the "prompt pay" provisions of the Texas Insurance Code.[9] Defendants removed the action to this court based on diversity jurisdiction and now move for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to a judgment. Fed. R. Civ. P. 56(c). A "material fact" is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 2511. If the movant meets this burden, the nonmovant must go beyond the pleadings and proffer evidence that establishes each of the

---

[8]Defendants' Motion for Summary Judgment, Docket Entry No. 13, Exhibit 1, Declaration of Sherry Smithhart, pp. 8-10.

[9]Notice of Removal, Docket Entry No. 1, Plaintiff's Original Petition, pp. 3-9.

challenged elements of the case, demonstrating the existence of genuine issues of material facts that must be resolved at trial. Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III.  Analysis

**A.   Misrepresentation Claims**

The Texas Insurance Code makes it unlawful to make any "statement misrepresenting the terms of any policy issued or the benefits or advantages promised thereby." Tex. Ins. Code art. 21.21 § 4(1) (Vernon 2004).[10]  It is also unlawful to misrepresent an insurance policy by

> (a) making an untrue statement of material fact;
> (b) failing to state a material fact that is neces-
> sary to make other statements made not misleading,
> considering the circumstances under which the
> statements were made; (c) making a statement in such

---

[10] Tex. Ins. Code art. 21.21 was repealed by Acts 2003, 78th Leg., ch. 1274, § 26(a)(1), effective April 1, 2005.

>   a manner as to mislead a reasonably prudent person to a false conclusion of a material fact . . .

Tex. Ins. Code art. 21.21 § 4(11).

St. Luke's alleges that defendants violated these provisions and negligently misrepresented Chenoweth's coverage in their conversations with plaintiff before Chenoweth's admittance to St. Luke's Hospital, stating that it relied on Principal Life's statements that Chenoweth's treatment would be covered by the Plan.[11]  In their motion for summary judgment defendants argue that plaintiff has not pointed to any particular misleading statement, noting that plaintiff's original petition only alleges that "there was no disclosure that Defendant would not honor and pay valid claims owed to Plaintiff."[12]  Defendants also provide the court with notes taken by Principal Life during the calls and the declaration of a Principal Life employee who interpreted the notes.[13]  This evidence shows that a disclaimer was given to plaintiff during the calls that the information provided to plaintiff was no guarantee

---

[11]Notice of Removal, Docket Entry No. 1, Plaintiff's Original Petition ¶¶ 9, 19-20.

[12]Defendants' Motion for Summary Judgment, Docket Entry No. 13, p. 8; Notice of Removal, Docket Entry No. 1, Plaintiff's Original Petition, pp. 6-7.

[13]Defendants' Motion for Summary Judgment, Docket Entry No. 13, Exhibit 1, Declaration of Sherry Smithhart, pp. 4-8. Defendant also provides evidence of a letter sent to plaintiff confirming that it had met the pre-admission authorization requirement and noting that this was no guarantee of payment and that any claims would be subject to the Plan's terms and exclusions.  Id. at 8.

of payment and that plaintiff was informed that all claims would be subject to review for pre-existing conditions.[14]  In <u>Celotex</u> terms, defendant has met its initial summary judgment burden.

The burden thus shifts to plaintiff to show the existence of a genuine dispute of a material fact to be resolved at trial.  In its response, plaintiff states that during one phone call "St. Luke's specifically asked the question whether there were any exclusions that would prevent payment to the hospital and the reply was 'no.'"[15]  However, plaintiff points to no evidence suggesting that such an exchange took place.  The only evidence plaintiff offers are the notes taken by a St. Luke's employee during one of these calls, which only state the date that Chenoweth's coverage went into effect and other information regarding his deductible and amount of coverage.[16]  Plaintiff does not dispute the validity of these statements, nor does it provide evidence that information about such an exclusion would have been recorded in the notes had it been given.  Plaintiff cannot satisfy its summary judgment burden with conclusory allegations or unsubstantiated assertions.

---

[14]Defendant provides evidence that a recorded message containing a general disclaimer was played for plaintiff before a Principal Life employee picked up the line.  Defendants' Motion for Summary Judgment, Docket Entry No. 13, Exhibit 1, Declaration of Sherry Smithhart, p. 6.

[15]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 17, ¶ 8.

[16]Appendix in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 18, Exhibit B.

Little, 37 F.3d at 1075.  The court resolves factual controversies in favor of the nonmoving party, but only when both parties have submitted evidence of contradictory facts.  Id.  The court therefore concludes that plaintiff has not met its summary judgment burden.  Summary judgment of its misrepresentation claims is therefore appropriate.

**B.   Breach of Contract Claim**

St. Luke's alleges that defendants breached a managed care contract by denying Chenoweth's claims.  Under the contract between St. Luke's and the PHCS Network, St. Luke's agreed to accept lower fees in exchange for being listed as a "preferred provider" within the Network.  Defendants point to section 8.3, which states that "CARRIER or SUBSIDIARY shall arrange to pay HOSPITAL pursuant to this Agreement . . . less the charges for any services not covered in POLICYHOLDER'S plan of benefits."[17]  Defendants argue that because plaintiff does not allege that Chenoweth is entitled to benefits under the Plan, there can be no breach of the contract.[18]  Although plaintiff restates its claim for breach of contract in its response, it does not attempt to refute defendant's argument.[19]

---

[17]Appendix in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 18, Exhibit A.

[18]Defendants' Motion for Summary Judgment, Docket Entry No. 13, p. 12.

[19]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 17, p. 5.  For reasons that are unclear to the court, plaintiff instead argues that its breach of
(continued...)

Because plaintiff has not met its burden, summary judgment of this claim is appropriate.

**C.   Prompt Pay Act Claims**

Plaintiff's final claim is that defendants violated the "prompt pay" provisions of the Texas Insurance Code, articles 3.70-3C, 20A.18B, and 21.55.[20]  Defendants argue that these provisions do not apply to them.

    1.   <u>Plaintiff's Article 3.07-3C Claim</u>

Article 3.70-3C § 3A(e) of the Texas Insurance Code stated that "not later than the 45th day after the date [an] insurer receives a clean claim from a preferred provider . . . the insurer shall make a determination of whether the claim is payable and . . . if the insurer determines that the claim is not payable, notify the preferred provider in writing why the claim will not be paid."[21]  Plaintiff argues that defendants did not comply with this

---

[19](...continued)
contract claim is not preempted by ERISA.  <u>Id.</u> at 5-7.  Defendants do not argue that this claim is preempted, only that there was no breach of the contract.  See Defendants' Motion for Summary Judgment, Docket Entry No. 13, p. 12.

[20]Notice of Removal, Docket Entry No. 1, Plaintiff's Original Petition, p. 5.  Articles 3.70-3C and 21.55 of the Texas Insurance Code were repealed by Acts 2003, 78th Leg., ch. 1274, § 26(a)(1)-(a)(2), effective April 1, 2005.  Article 20A.18B was repealed by Acts 2001, 77th Leg., Ch. 1419, § 31(b)(13) effective June 1, 2003.

[21]The statute further provides that "[i]f an insurer needs additional information from a treating preferred provider to determine payment, the insurer, not later than the 30th calendar
                                                      (continued...)

time line by not requesting Chenoweth's records until May 21, 2003, and not making a final decision until November 5, 2003.

Section 2 of article 3.70-3C provided that

> [t]his article applies to any preferred provider benefit plan in which an insurer provides, through its health insurance policy, for the payment of a level of coverage which is different from the basic level of coverage provided by the health insurance policy if the insured uses a preferred provider.

"Health insurance policy" is defined as "a group or individual insurance policy, certificate, or contract providing benefits for medical or surgical expenses incurred as a result of an accident or sickness." Tex. Ins. Code art. 3.70-3C § 1(2) (Vernon 2004). "Insurer" means "any life, health, and accident; health and accident; or health insurance company or company operating pursuant to Chapter 3, 10, 20, 22, or 26 of this code authorized to issue, deliver, or issue for delivery in this state health insurance policies, certificates, or contracts." Id. at § 1(6). Defendants argue that the statute does not apply to them because the Plan is not an "insurance policy" and neither Guardsmark, Inc. nor Principal Life is an "insurer" within the meaning of section 2.

---

[21](...continued)
day after the date the insurer receives a clean claim, shall request in writing that the preferred provider provide an attachment to the claim . . . . An insurer that requests an attachment under this subsection shall determine whether the claim is payable on or before the later of the 15th day after the date the insurer receives the requested attachment . . . ." Tex. Ins. Code art. 3.70-3C § 3A(j) (Vernon 2004).

Plaintiff makes no response to defendants' argument.[22]  Summary judgment will be granted on this claim because the evidence submitted by defendants shows that article 3.70-3C does not apply to either defendant.[23]

### 2. Plaintiff's Article 20A.18B Claim

Similar to article 3.07-3C, article 20A.18B of the Texas Insurance Code required prompt payment of insurance claims by health maintenance organizations.  Defendants argue that the statute does not apply to them because they are not health maintenance organizations.[24]  Plaintiff makes no response to this argument.[25]  The court is persuaded that summary judgment is appropriate on plaintiff's article 20A.18B claim.

### 3. Plaintiff's Article 21.55 Claim

Article 21.55 of the Texas Insurance Code also required prompt payment of claims by insurers.  "Section 6 of article 21.55

---

[22]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 17, pp. 7-8.  Once again, the plaintiff argues only that application of the prompt pay provisions is not preempted by ERISA, id., which defendants do not dispute.

[23]See Defendants' Motion for Summary Judgment, Docket Entry No. 13, Exhibit 1, No. 1.

[24]Defendants' Motion for Summary Judgment, Docket Entry No. 13, p. 13, note 3.

[25]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 17, pp. 7-8.  Plaintiff does not even mention article 20A.18B in its response.  Id.

mandate[d] that (1) if a claim is made pursuant to an insurance policy, (2) the insurer is liable under the policy, and (3) the insurer is not in compliance with the requirements of article 21.55, the insurer shall be liable . . . ." Protective Life Ins. Co. v. Russell, 119 S.W.3d 274, 285 (Tex. App. -- Tyler 2003, pet. denied); Tex. Ins. Code art. 21.55 § 6 (Vernon 2004). Although defendants have not sought summary judgment on this claim, after careful review of the evidence the court finds no indication that either defendant should be considered an "insurer" within the meaning of the statute. Tex. Ins. Code art. 21.55 § 1 (Vernon 2004). Moreover, plaintiff does not allege that Chenoweth is entitled to benefits under the Plan, which is required for a 21.55 claim. Accordingly, plaintiff shall have until February 2, 2007, to inform the court (1) of any evidence establishing a claim under art. 21.55 or (2) that it does not oppose summary judgment on this claim. See Leatherman, et al. v. Tarrant County Narcotics Intelligence & Coordination Unit, et al., 28 F.3d 1388, 1397 (5th Cir. 1994); Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2554 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments sua sponte, as long as the losing party was on notice that she had to come forward with all of her evidence").

### IV.  Conclusion and Order

For the reasons stated above, the court concludes that summary judgment is warranted on all of plaintiff's claims except its claim

-11-

under Tex. Ins. Code art. 21.55.  The Defendants' Motion for Summary Judgment (Docket Entry No. 13) is therefore **GRANTED** with respect to all other claims.  Paragraphs 10 and 11 of the Docket Control Order (Docket Entry No. 10) are **VACATED**.

**SIGNED** at Houston, Texas, on this 22nd day of January, 2007.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE